JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Jane Doe Student Plaintiffs 1-13 minors and Jane Doe Parent Plaintiffs 1-18, Individually

**DEFENDANTS**
Lancaster Country Day School, N.S., K.S. and W.S., W.D., B.D. and D.D, John Doe Companies, 1-10

**(b)** County of Residence of First Listed Plaintiff    Lancaster
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nadeem Bezar, Esq/Alex Vandyke, Esq/Grace Grimes, Esq., Kline & Specter, PC, 1525 Locust St., Phila., PA 19102 215-772-1000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [x] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. Sections 2255, 2256 and 2252A (childhood sexual abuse) and Title IX (sex-based discrimination)

Brief description of cause:
Child sexual abuse and sex-based discrimination

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
June 15, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ Nadeem A. Bezar, Esquire

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:_Lancaster Country Day School, 725 Hamilton Road, Lancaster, PA 17603_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☒ 16. All Other Federal Question Cases. *(Please specify):*_18 U.S.C. Sections 2255, 2256 and 2252A (childhood sexual abuse & Title IX (sex based discrimination

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| Jane Doe Student Plaintiffs 1-13, minors, et al     v. <br><br> Lancaster Country Day School, et al | CIVIL ACTION <br><br> NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (x )

| | | |
|---|---|---|
| June 15, 2026 | Nadeem A. Bezar, Esq. | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-772-1000 | 215-792-5524 | nadeem.bezar@klinespecter.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.



American LegalNet, Inc.
www.FormsWorkFlow.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE PLAINTIFFS 1-13, minors, by and through their parents and natural guardians, JANE DOE PARENT PLAINTIFFS 1-18; <br><br> and <br><br> JANE DOE PARENT PLAINTIFFS 1-18, individually; <br><br><br> *Plaintiffs,* <br> v. <br><br> LANCASTER COUNTRY DAY SCHOOL <br><br> and <br><br> N.S., a minor, by and through his parents and natural guardians, K.S. and W.S.; <br><br> and <br><br> K.S. and W.S.; <br><br> and <br><br> W.D., a minor, by and through his parents and natural guardians, B.D. and D.D.; <br><br> and <br><br> B.D. and D.D.; <br><br> and <br><br> JOHN DOE AI COMPANIES 1–10, <br> *Defendants.* | Civil Action No. _____ <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

1.      This case arises from an extended, catastrophic institutional failure. For months, dozens of minor female students at Lancaster Country Day School ("LCDS" or "the School") were forced to go to high school while "deepfake" nude images of them were circulating within the school community. The two perpetrators, N.S. and W.D., used AI image-generation platforms to create approximately 350 sexually explicit deepfake images of at least 59 minor girls, sourcing the underlying photographs from school photos, yearbooks, Instagram, TikTok, and FaceTime chats. The images depicted the victims' real faces morphed onto pornographic depictions of nude female bodies.

2.      This humiliating ordeal ruined the girls' high school experience and inflicted emotional harm they will carry with them for the rest of their lives. It also caused severe emotional distress for the girls' parents, who were powerless to stop these AI-generated pornographic images of their daughters from spreading.

3.      For months, LCDS knew that AI-generated pornography was spreading through the School but did nothing to protect its female students. What's worse, LCDS actively obstructed the investigation and covered up what was happening, thus depriving its students and their parents of the ability to protect themselves or report these crimes to law enforcement. As a direct result of LCDS's failure to act, the abuse continued unabated for several months. When questioned by concerned parents about the School's failure to act, Lindsay Deibler-Wallace, Assistant Head of Upper School, told the parents that "boys will be boys."

4.      The victims' suffering is profound and ongoing. Among other things, they have suffered anxiety and panic attacks, depression, post-traumatic stress disorder, an inability to focus

2

on schoolwork, loss of trust, a persistent fear that the images may resurface in ways beyond their control, and physical manifestations of this emotional distress.

5.      Plaintiffs bring this Complaint to seek justice, including compensatory and punitive damages, and all other available relief, for the injuries caused by the Defendants' unlawful conduct.

## THE PARTIES

### A.      Plaintiffs

6.      Jane Doe Plaintiffs 1-13 (the "Student Plaintiffs") were, at all relevant times, minor female students at Lancaster Country Day School. The Student Plaintiffs appear in this action through their parents and natural guardians, the Jane Doe Parent Plaintiffs.  Their identities are withheld from this public filing to protect their privacy. The Student Plaintiffs may be contacted through their undersigned counsel. Plaintiffs will promptly move the Court for leave to proceed under pseudonyms given the risk of severe harm should the victims' names become public. *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001).

7.      Jane Doe Parent Plaintiffs 1-18 (the "Parent Plaintiffs") are the parents and natural guardians of the Student Plaintiffs. They bring claims on behalf of their daughters and in their individual capacity for the harms they suffered as a result of Defendants' conduct, including severe emotional distress arising from the victimization of their minor children. Their identities are withheld from this public filing to protect their privacy and that of their daughters. The Parent Plaintiffs may be contacted through their undersigned counsel. Plaintiffs will promptly move the Court for leave to proceed under pseudonyms given the risk of severe harm should the victims' names become public. *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001).

**B.    Defendants**

8.    Defendant Lancaster Country Day School ("LCDS") is a private, independent, coeducational PreK–12 school located at 725 Hamilton Road, Lancaster, Pennsylvania 17603.  At all times material hereto, this Defendant was engaged, through its actual agents, ostensible agents, servants, partners and/or employees, in the provision of education services to Plaintiffs. Plaintiffs are asserting negligence claims against this Defendant. A claim is also being asserted against this Defendant for the negligence of its actual agents, apparent agents, ostensible agents, servants, partners, and/or employees, including teachers, counselors, school administrators, and other staff, all of whom were acting within the scope of their employment, including but not limited to:

- Matthew Micciche, Head of School

- Jennifer Gabriel, Head of Upper School

- Lindsay Deibler-Wallace, Assistant Head of Upper School

- Megan Reed, Assistant Head of School

- LJ Bloom, President of the Board until November 2024

- Angela Alhadeff, President of the Board beginning November 2024

9.    At all relevant times, LCDS received and accepted federal financial assistance, including but not limited to participation in federal programs and the receipt of federal funds through the E-Rate program administered by the Federal Communications Commission, the federal Paycheck Protection Program, and other federally funded programs. LCDS is therefore a recipient of federal financial assistance for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and other applicable federal statutes.

10.    Defendant N.S. is a minor male who was, at all relevant times, a student at LCDS. He is sued by and through his parents and natural guardians, W.S. and K.S. (collectively, the "S.

4

Parents"). The S. Parents are also sued in their individual capacities for their own negligence in supervising their minor child and for parental liability. Their initials are used in this filing in lieu of their full names to protect the identity of minor Defendant N.S.

11.     Defendant W.D. is a minor male who was, at all relevant times, a student at LCDS. He is sued individually and by and through his parents and natural guardians, D.D. and B.D. (collectively, the "D. Parents"). The D. Parents are also sued in their individual capacities for their own negligence in supervising their minor child and for parental liability. Their initials are used in this filing in lieu of their full names to protect the identity of minor Defendant W.D.

12.     Defendants John Doe AI Companies 1 through 10 (the "AI Company Defendants") are currently unknown entities, including corporations, limited liability companies, partnerships, or other business organizations, that own, operate, develop, maintain, and/or distribute one or more artificial intelligence image-generation platforms, applications, or services that were used by N.S. and/or W.D. to create, edit, share, and/or disseminate the sexually explicit deepfake images at issue in this case. These entities' identities, organizational forms, and places of business are not yet ascertained and will be identified through discovery. Upon information and belief, one or more of the AI Company Defendants failed to implement adequate age-verification measures, content-filtering systems, crime prevention measures, or terms-of-service enforcement mechanisms that would have prevented minors from using their platforms to generate Child Sexual Abuse Material ("CSAM"). Plaintiffs reserve the right to amend this Complaint to name these entities upon identification.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States, including Title IX

of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.; and 18 U.S.C. § 2255 (civil remedy for victims of child sexual exploitation).

14.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Pennsylvania and the Defendants reside in this District.

## FACTUAL ALLEGATIONS

### A.     Lancaster Country Day School and Its Mandatory Reporting Obligations

16.     LCDS is a private, college-preparatory school that holds itself out as providing a safe, nurturing, and academically rigorous environment for its students. The School employs numerous teachers, administrators, counselors, and other staff who work with students on a regular basis.

17.     Under the Pennsylvania Child Protective Services Law ("CPSL"), 23 Pa. C.S. § 6311, each of these school employees is a mandated reporter who is required, upon having reasonable cause to suspect that a child has been or is being subjected to child abuse, to immediately report that suspicion to the Pennsylvania ChildLine at 1-800-932-0313 and to law enforcement.

18.     Under 23 Pa. C.S. § 6314, a mandated reporter's obligation to report is personal and non-delegable. A mandated reporter may not assume that someone else has made or will make the required report.

6

19.    LCDS also participated in Pennsylvania's Safe2Say Something ("S2SS") program, a statewide anonymous safety reporting system funded and operated through the Pennsylvania Office of the Attorney General. Under S2SS protocols and LCDS's own stated policies, the School maintained a designated S2SS team of administrators and counselors who were responsible for receiving S2SS tips, triaging the reports, coordinating with law enforcement, and managing the School's response. By participating in the S2SS program, LCDS voluntarily undertook the affirmative duty to investigate, report, and appropriately respond to Safe2Say tips it received.

**B.      The Safe2Say Tip and the School's Failure to Report**

20.    Defendant W.D. matriculated to LCDS as a mid-year admit in 2022. Defendant W.D. had a history of behavioral issues prior to ever matriculating at LCDS. When W.D. applied to LCDS, school administrators at W.D.'s prior school contacted administrators at LCDS and warned them not to admit W.D. because of, among other things, a history of inappropriate behavior and academic dishonesty. These warnings went unheeded. Indeed, LCDS conducted no additional investigation after receiving this warning about W.D. Nor did they implement any heightened supervision, warnings, or other safeguards after allowing W.D. to enter their school community.

21.    Defendant W.D.'s misbehavior continued after he was admitted to LCDS. For example, Defendant W.D. was suspended from LCDS after using a homophobic slur toward a gay teacher.

22.    By November 2023 at the latest, Defendant W.D., aided and abetted by his classmate Defendant N.S., had begun using artificial intelligence image-generation platforms to create sexually explicit deepfake images of their minor female classmates. The images were created using photographs taken from social media and other sources without the victims'

knowledge or consent. They were distributed using internet services including but not limited to Discord, again without the victims' knowledge or consent.

23. Upon information and belief, N.S. and W.D. created the images by taking the victims' source images and using AI software to create images where the subjects appear to be naked. N.S. and W.D. then disseminated these "deepfake" nude images via the internet.

24. In November 2023, an anonymous tip was submitted to LCDS through the S2SS program. The tip reported that a student was using artificial intelligence technology to generate nude images of his classmates.

25. The S2SS tip was received by members of the LCDS S2SS team, all of whom were mandated reporters under Pennsylvania law. The tip described conduct constituting child sexual abuse under the CPSL and federal law—specifically, the production and/or possession of child sexual abuse material involving minor students.

26. Despite receiving this tip, no LCDS administrator or staff member reported the suspected child abuse to ChildLine, to the Manheim Township Police Department, or to any other law enforcement agency. The School instead conducted a wholly inadequate internal "investigation" that consisted of little more than interviewing the accused student, who predictably denied the allegation.

27. The School did not interview other students, did not review any electronic devices (school-issued or personal), did not notify the parents of any potential victims, and did not contact law enforcement.

28. As a consequence of the School's failure to act, the abuse was permitted to continue for several months, during which a significant number of additional sexually explicit AI-generated images of minor female students were created and distributed.

8

**C.    Continued Abuse During the School's Period of Inaction**

29.    From November 2023 through at least May 2024, N.S. and W.D. continued to use artificial intelligence image-generation platforms to create sexually explicit deepfake images of their minor female classmates.

30.    In total, N.S. and W.D. created at least 350 sexually explicit deepfake images depicting at least 59 minor girls under the age of 18. For certain individual victims, dozens of separate images were created. The images depicted the victims' real faces and bodies morphed onto pornographic, nude depictions and constituted child sexual abuse material under 18 U.S.C. §§ 2256 and 2252A.

31.    The images were shared and exchanged among the perpetrators and, upon information and belief, were distributed beyond them, including through a Discord group chat and other messaging platforms.

32.    This additional victimization was a direct and foreseeable result of LCDS's inaction. Had LCDS taken appropriate action when it first learned of this conduct, the additional victimization that occurred after November 2023 would never have occurred.

33.    On May 29, 2024, the Manheim Township Police Department received a report that a student at LCDS may be distributing inappropriate photos of classmates. That report—made by a concerned parent, not the School—was the only police report filed concerning the AI-generated child sexual abuse material at LCDS.

34.    In the days immediately following, the LCDS upper school was in a state of acute panic and disruption related to the AI-generated images. The School still failed to expel either perpetrator.

35.     Between May 2024 and the filing of this action, LCDS engaged in a sustained pattern of misconduct that obstructed the criminal investigation, discouraged students from discussing the incident with law enforcement, kept information from parents, and otherwise denied victims the support and information to which they were entitled. When questioned about the School's failure to act, Lindsay Deibler-Wallace, Assistant Head of Upper School, told concerned parents that "boys will be boys."

36.     LCDS's negligence was carried out by, among other things, the following individuals, all of whom oversaw, led, and/or participated in LCDS' negligent investigation, response to, and cover-up of the deepfake pornography crisis occurring at the school:

- Matthew Micciche, Head of School

- Jennifer Gabriel, Head of Upper School

- Lindsay Deibler-Wallace, Assistant Head of Upper School

- Megan Reed, Assistant Head of School

- LJ Bloom, President of the Board until November 2024

- Angela Alhadeff, President of the Board beginning November 2024

37.     In late 2024, the victims and their parents were brought into the Susquehanna Regional Police Department to confirm that they are the individuals depicted in the deepfake pornography. For the first time, these victims and their parents witnessed with their own eyes the grotesque deepfake images of them that had been circulating in their school for several months. Viewing these images caused severe emotional distress for both the students and their parents.

38.     In March 2025, Defendants N.S. and W.D. pleaded guilty to 59 felony counts of sexual abuse of children and criminal conspiracy.

10

**D.     The AI Company Defendants**

39.     Upon information and belief, N.S. and/or W.D. used one or more AI image-generation platforms operated by the John Doe AI Company Defendants to create the sexually explicit deepfake images at issue. These platforms enabled users to upload real photographs of individuals and, through AI processing, generate sexually explicit composite images.

40.     Upon information and belief, the AI Company Defendants knew or should have known that their platforms were being used to generate non-consensual intimate imagery and CSAM involving minors. The AI Company Defendants failed to implement reasonable safeguards including, without limitation: (a) adequate age-verification systems to prevent minors from accessing or using the platforms; (b) effective content-moderation systems capable of detecting and preventing the generation of sexually explicit images of minors; (c) adequate terms-of-service enforcement mechanisms; and (d) reporting mechanisms for identifying and reporting CSAM to the National Center for Missing and Exploited Children ("NCMEC") as required by 18 U.S.C. § 2258A.

41.     The platforms used and the specific identities of the AI Company Defendants are not yet known or knowable to Plaintiffs through exercise of reasonable diligence and will be determined through discovery.

42.     As a direct and    proximate result of Defendants'    conduct,    Plaintiffs    have suffered, and    continue   to   suffer,   the   following   damages,   injuries,   and   losses, all   or some of which are ongoing and permanent in nature:

    a)  Anxiety

    b)  Depression

    c)  Post-traumatic stress disorder

11

d)  Hypervigilance

e)  Insomnia

f)  Sleep disturbances

g)  Nightmares

h)  Recurrent headaches

i)  Physical manifestations of emotional trauma

j)  Physical illness

k)  Nausea

l)  Vomiting

m) Panic attacks

n)  Dizziness

o)  Rapid heartbeat

p)  Hyperventilation

q)  Loss of appetite/disordered eating

r)  Inability to concentrate

s)  Decline in academic performance

t)  Missed instruction

u)  Impaired educational development

v)  Diminished future academic and professional prospects

w)  Social withdrawal and isolation from peer relationships

x)  Loss of trust in others

y)  Feelings of guilt and shame

z)  Body dysmorphia

12

aa) Violation of bodily integrity and personal dignity

bb) Violation of privacy and right to control one's own image and likeness

cc) Humiliation

dd) Shock

ee) Loss of enjoyment of life

ff) Loss of childhood normalcy and innocence

gg) Ongoing and persistent fear that the images may resurface and cause future harm to their personal, academic, and professional life

hh) Costs of psychological counseling, trauma therapy, and related medical care, past and future

ii) Such other damages as may be revealed through discovery and proven at trial.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
**(Student Plaintiffs v. N.S. and W.D.)**

43.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

44.    N.S. and W.D. owed a duty of reasonable care to the Student Plaintiffs and other female students at LCDS not to engage in conduct that would cause them harm, including refraining from creating, distributing, or possessing sexually explicit images created using their classmates' likenesses without consent.

45.    N.S. and W.D. breached that duty by deliberately and repeatedly using AI image-generation technology to create sexually explicit deepfake images of the Student Plaintiffs and

13

other minor female students, by collecting and using intimate and non-intimate photographs of their classmates without consent, and by sharing those images among themselves and others.

46.    As a direct and proximate result of N.S.'s and W.D.'s breach of duty, the Plaintiffs suffered and continue to suffer severe emotional distress, psychological harm, humiliation, reputational harm, loss of privacy, and other compensable damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT II – NEGLIGENCE *PER SE*
### (Student Plaintiffs v. N.S. and W.D.)

47.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

48.    At the time of the conduct alleged herein, it was a violation of federal law, including 18 U.S.C. §§ 2252A and 2256, to produce, possess, distribute, or receive child sexual abuse material, including AI-generated images that depict minors engaging in sexually explicit conduct. It was also a violation of Pennsylvania law, including 18 Pa. C.S. §§ 6312 and 6321, to create, distribute, or possess sexually explicit images of minors. These statutes were enacted for the protection of individuals such as the Student Plaintiffs from precisely the type of harm she suffered.

49.    N.S. and W.D. violated these statutes by creating sexually explicit AI-generated images depicting the Student Plaintiffs and by distributing and/or sharing those images.

50.    These violations constitute negligence per se under Pennsylvania law.

51.    As a direct and proximate result of these statutory violations, the Student Plaintiffs suffered and continue to suffer severe and lasting damages as set forth herein.

14

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT III – CIVIL LIABILITY FOR SEXUAL EXPLOITATION OF A MINOR, 18 U.S.C. § 2255
### (Student Plaintiffs v. N.S. and W.D.)

52.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

53.    18 U.S.C. § 2255 provides a civil cause of action for any person who, while a minor, was a victim of a violation of 18 U.S.C. § 2252A (which prohibits the production, possession, distribution, and receipt of child pornography, including AI-generated child sexual abuse material) and who suffers personal injury as a result of such violation, to bring a civil action in an appropriate district court of the United States and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.

54.    The Student Plaintiffs were minors at all relevant times. The images created by N.S. and W.D. constituted visual depictions of minors engaging in sexually explicit conduct within the meaning of 18 U.S.C. § 2256, including AI-generated images that are, or are indistinguishable from, depictions of minors engaging in sexually explicit conduct.

55.    N.S. and W.D. violated 18 U.S.C. § 2252A by producing, possessing, and distributing child sexual abuse material involving the Student Plaintiffs and other minor victims and transmitting them using means or facilities of interstate commerce including internet-connected computers and devices.

56.    As a direct and proximate result of those violations, the Student Plaintiffs suffered personal injuries as alleged herein, including but not limited to severe emotional distress,

15

psychological trauma, and reputational harm. Plaintiffs are entitled to recover actual damages, costs, attorney's fees, and the statutory minimum damages provided under 18 U.S.C. § 2255.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Student Plaintiffs v. N.S. and W.D.)

57.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

58.    Defendants N.S and W.D.'s conduct was intentional and deliberate. They made a calculated, sustained effort over an extended period to create, collect, and distribute sexually explicit AI-generated images of their female classmates.

59.    The conduct was extreme and outrageous beyond all bounds of decency tolerated in a civilized society. Creating and distributing hundreds of sexually explicit images of dozens of high school girls, including images generated from stolen photographs of their classmates, without their knowledge or consent, and targeting the girls for the purpose of sexual exploitation, constitutes conduct of the most egregious nature. Defendants even surreptitiously captured images during private video calls, thus emphasizing the premeditated and outrageous nature of their conduct.

60.    As a direct and proximate result of this extreme and outrageous conduct, the Student Plaintiffs suffered severe emotional distress and physical sequelae described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

16

**COUNT V – NEGLIGENCE**
**(Student Plaintiffs v. the S. Parents and the D. Parents)**

61.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62.    The S. Parents and D. Parents each owed a duty of reasonable care to supervise their respective minor child and to take reasonable precautions to prevent their child from engaging in tortious and illegal conduct that could cause harm to third parties.

63.    Upon information and belief, the S. Parents and/or D. Parents knew or should have known that their child had access to internet-connected devices, AI platforms, and social media accounts through which the subject conduct was carried out, and that, given their child's prior history of concerning behaviors (including prior disciplinary issues known to or knowable by the parents), there existed a particular need for heightened supervision of their child's online activities. Further, the S. Parents and D. Parents were made aware of the children's conduct after the first S2SS tip was received, yet failed to adequately supervise their children to prevent further harm even after being specifically alerted of the wrongful conduct.

64.    The S. Parents and D. Parents breached their duty of reasonable supervision by, among other things: (a) failing to adequately monitor their minor child's use of internet-connected devices and AI platforms; (b) failing to install or maintain parental controls or oversight mechanisms on devices under their household's control; (c) failing to supervise their child's online activities despite knowledge of prior concerning behaviors; and (d) permitting their child unsupervised access to technology that enabled the creation of the unlawful images.

65.    As a direct and proximate result of the parents' failure to exercise reasonable supervision over their respective minor child, the Student Plaintiffs suffered and continue to suffer the damages described herein.

17

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

### COUNT VI – NEGLIGENCE
**(Student Plaintiffs v. Lancaster Country Day School)**

66. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

67. LCDS owed a duty of reasonable care to the Student Plaintiffs and other students in its care. As a school that stood in loco parentis with respect to its enrolled students, LCDS assumed a heightened duty to protect students from foreseeable harm and to take reasonable measures to prevent abuse and exploitation of students entrusted to its supervision.

68. LCDS breached its duty of care in multiple independent respects, including without limitation:

(a) Failing to take reasonable measures to protect student victims of AI-generated nude images;

(b) Failing to implement reasonable policies and procedures to avoid and/or mitigate harm to students, including the creation and dissemination of AI-generated nude images;

(c) Failing to use reasonable care to ensure that students would not harm classmates using school-issued devices, on school property, and/or on school internet connection, including by creating and disseminating AI-generated nude images;

(d) Failing to use reasonable care when hiring, training, and supervising staff to ensure they take appropriate actions when faced with student-on-student misconduct, including the creation and dissemination of AI-generated nude images;

18

(e) Failing to adequately report the November 2023 S2SS tip regarding AI-generated nude images of students to law enforcement, ChildLine, or any other appropriate authority, as required by law and by reasonable institutional practice;

(f) Failing to use reasonable care when admitting and supervising students to ensure that students will not harm classmates, including by creating and dissemination AI-generated nude images;

(g) Conducting a wholly inadequate "investigation" of reported misconduct by students, including the creation and dissemination of AI-generated nude images;

(h) Failing to notify the parents of any potential victim following the November 2023 report;

(i) Failing to preserve or review electronic evidence on school-issued devices following receipt of the S2SS tip;

(j) Failing to timely contact law enforcement;

(k) Obstructing law enforcement's investigation by refusing to provide a school yearbook and failing to respond to the investigating detective's requests;

(l) Instructing and discouraging victims and their families from seeking assistance from law enforcement;

(m) Failing to implement and enforce adequate policies and procedures governing Safe2Say Something reports and mandatory reporting obligations;

(n) Failing to use reasonable care when admitting students who may pose a danger to classmates;

(o) Admitting a student with a known prior history of concerning behaviors and thereafter failing to appropriately monitor that student's conduct;

19

(p) Failing to provide adequate support, counseling, and resources to the victims following the abuse;

(q) Otherwise failing to use due care under the circumstances.

69.     As a direct and proximate result of LCDS's negligence, the Student Plaintiffs and other victims suffered and continue to suffer the damages described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Student Plaintiffs v. Lancaster Country Day School)

70.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

71.     At all times relevant hereto, Defendant Lancaster Country Day School owed a special duty of care to the Student Plaintiffs by virtue of the school-student relationship, whereby Defendant assumed responsibility for the safety, supervision, welfare, and protection of students entrusted to its care during the school day and in connection with school activities.

72.     This special relationship gave rise to a duty on the part of Defendant to take reasonable steps to protect student Plaintiffs from foreseeable harm, including harm arising from the creation and distribution of sexually explicit imagery generated using the likenesses of its students, of which Defendant had actual and/or constructive knowledge no later than November 2023.

73.     Defendant breached that duty in multiple independent respects, including without limitation:

20

(a) Failing to take reasonable measures to protect student victims of AI-generated nude images;

(b) Failing to implement reasonable policies and procedures to avoid and/or mitigate harm to students, including the creation and dissemination of AI-generated nude images;

(c) Failing to use reasonable care that students would not harm classmates using school-issued devices, on school property, and/or on school internet connection, including by creating and disseminating AI-generated nude images;

(d) Failing to use reasonable care when hiring, training, and supervising staff to ensure they take appropriate actions when faced with student-on-student misconduct, including the creation and dissemination of AI-generated nude images;

(e) Failing to adequately report the November 2023 S2SS tip regarding AI-generated nude images of students to law enforcement, ChildLine, or any other appropriate authority, as required by law and by reasonable institutional practice;

(f) Failing to use reasonable care when admitting and supervising students to ensure that students will not harm classmates, including by creating and dissemination AI-generated nude images;

(g) Conducting a wholly inadequate "investigation" of reported misconduct by students, including the creation and dissemination of AI-generated nude images;

(h) Failing to notify the parents of any potential victim following the November 2023 report;

(i) Failing to preserve or review electronic evidence on school-issued devices following receipt of the S2SS tip;

21

(j) Failing to timely contact law enforcement;

(k) Obstructing law enforcement's investigation by refusing to provide a school yearbook and failing to respond to the investigating detective's requests;

(l) Instructing and discouraging victims and their families from seeking assistance from law enforcement;

(m) Failing to implement and enforce adequate policies and procedures governing Safe2Say Something reports and mandatory reporting obligations;

(n) Failing to use reasonable care when admitting students who may pose a danger to classmates;

(o) Admitting a student with a known prior history of concerning behaviors and thereafter failing to appropriately monitor that student's conduct;

(p) Failing to provide adequate support, counseling, and resources to the victims following the abuse;

(q) Otherwise failing to use due care under the circumstances.

74.     As a direct and proximate result of Defendant's breach of its duty of care, student Plaintiffs suffered serious and documented emotional distress, the physical symptoms of which include but are not limited to anxiety, disrupted sleep, loss of appetite, recurrent headaches, hypervigilance, inability to concentrate, and academic decline.

75.     The emotional distress suffered by the Student Plaintiffs is severe, ongoing, and has caused physical harm, including the somatic and neurological manifestations described herein, satisfying the requirements for recovery under Pennsylvania law.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT VIII – NEGLIGENCE *PER SE*
### (Student Plaintiffs v. Lancaster Country Day School)

76.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77.     The Pennsylvania Child Protective Services Law ("CPSL"), 23 Pa. C.S. §§ 6301 et seq., imposes mandatory reporting obligations on all school employees, including administrators, teachers, counselors, and staff. Under 23 Pa. C.S. § 6311, a mandated reporter who has reasonable cause to suspect that a child has been subjected to child abuse, which expressly includes the creation of sexually explicit depictions of a child, must immediately report that suspicion to ChildLine and to local law enforcement.

78.     The CPSL's mandatory reporting provisions were enacted to protect minor children from precisely the category of harm suffered by the Student Plaintiffs and other victims: the failure of those in positions of authority and responsibility to take timely action to stop ongoing child sexual abuse and exploitation. The victims are members of the class the statute was designed to protect.

79.     LCDS's S2SS team members, administrators, counselors, and other staff who received or had knowledge of the November 2023 S2SS tip were mandatory reporters under the CPSL. Upon receiving a credible tip that a student had created nude images of minor female students using artificial intelligence — conduct constituting child sexual abuse under Pennsylvania and federal law — these individuals were legally required to immediately report to ChildLine and to law enforcement.

80.     LCDS and its employees and agents violated the CPSL's mandatory reporting provisions at least as early as November 2023, and this failure continued at all relevant times.

81.     These statutory violations constitute negligence per se under Pennsylvania law, establishing breach of duty as a matter of law. As a direct and proximate result of LCDS's violation of its mandatory reporting obligations, the Student Plaintiffs and other victims suffered the harm described herein, including harm that would not have occurred had timely reports been made as required.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

### COUNT IX – VIOLATION OF TITLE IX
**(Student Plaintiffs v. Lancaster Country Day School)**

82.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

83.     Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

84.     At all relevant times, LCDS received federal financial assistance within the meaning of Title IX, including through the E-Rate program, the Paycheck Protection Program, and/or other federal funding programs, and is therefore subject to Title IX's requirements.

85.     The conduct of N.S. and W.D. constituted severe, pervasive, and objectively offensive sexual harassment of the Student Plaintiffs on the basis of their sex, within the meaning of *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). The targeted female students

24

were exclusively victimized on the basis of their sex. No male students were subjected to this treatment.

86.     This harassment was so severe, pervasive, and objectively offensive that it effectively deprived the Student Plaintiffs and other victims of equal access to the educational opportunities and benefits provided by LCDS, including by causing severe anxiety, loss of concentration, difficulty focusing on schoolwork, decline in academic performance, disengagement from the school environment, loss of trust in the school environment, and the persistent psychological burden of knowing that sexually explicit fabricated images of themselves existed and could resurface.

87.     LCDS had actual notice of the harassment no later than November 2023, when the S2SS tip was received by the School.

88.     LCDS's response to the reported harassment was unreasonable in light of the known circumstances and constituted deliberate indifference. Specifically, LCDS failed to take any meaningful investigative steps after receiving the S2SS tip; failed to report the perpetrators to law enforcement; failed to remove the perpetrators from the school environment; failed to prevent further distribution of harmful material; failed to notify victims, their parents, or law enforcement; declared the investigation "concluded" without any meaningful inquiry; actively discouraged victims from seeking law enforcement assistance; obstructed the police investigation by withholding information and the school yearbook; and failed to implement any anti-harassment measures or remedial steps that would have prevented and/or mitigated the harm.

89.     LCDS's deliberate indifference caused the Student Plaintiffs to suffer the severe psychological, educational, and personal harms described herein.

25

90.    LCDS is liable to the Student Plaintiffs for damages under Title IX, including compensatory damages for all harm caused by its deliberate indifference to student-on-student sexual harassment.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT X – CIVIL LIABILITY UNDER 18 U.S.C. § 2255
### (Student Plaintiffs v. LCDS and John Doe AI Companies 1–10)

91.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

92.    18 U.S.C. § 2255 provides a civil cause of action for any person who, while a minor, was a victim of a violation of 18 U.S.C. § 2252A (which prohibits the production, possession, distribution, and receipt of child pornography, including AI-generated child sexual abuse material) and who suffers personal injury as a result of such violation, to bring a civil action in an appropriate district court of the United States and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.

93.    The John Doe AI Company Defendants, upon information and belief, provided the instrumentality through which the CSAM was produced. Electronic service providers, including providers of AI image-generation services, have a duty under 18 U.S.C. § 2258A to report apparent CSAM to NCMEC. Upon information and belief, one or more of the AI Company Defendants failed to comply with this reporting obligation. Additionally, by operating platforms without adequate safeguards — and by knowingly or recklessly enabling users to generate CSAM — the AI Company Defendants are liable under applicable federal and state law for their contribution to the Student Plaintiffs' injuries.

26

94.     As a result of these statutory violations, Student Plaintiffs suffered the injuries described herein.

95.     Plaintiffs are entitled to recover actual damages, costs of suit, and reasonable attorneys' fees against LCDS and the AI Company Defendants as provided under 18 U.S.C. § 2255.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT XI – NEGLIGENCE
### (Student Plaintiffs v. John Doe AI Companies 1–10)

96.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

97.     The AI Company Defendants owed a duty of reasonable care to minor users and to third-party individuals whose likenesses might foreseeably be processed through their platforms, to implement reasonable safeguards to prevent their services from being used to generate child sexual abuse material or other nonconsensual sexual imagery.

98.     The risk that AI image-generation platforms would be used to create non-consensual sexually explicit imagery — including CSAM — was foreseeable, and has been widely recognized in the technology industry, by law enforcement, and by lawmakers. The AI Company Defendants knew or should have known of this risk.

99.     The AI Company Defendants breached their duty of care by failing to implement adequate: (a) age-verification systems; (b) content-moderation technology capable of detecting and blocking the generation of sexually explicit depictions of minors; (c) guardrails to prevent the

27

creation of sexually explicit imagery; (d) terms-of-service enforcement mechanisms; and (e) NCMEC reporting procedures as required by 18 U.S.C. § 2258A.

100.    As a direct and proximate result of the AI Company Defendants' negligence, N.S. and W.D. were able to use their platforms to create the sexually explicit deepfake images at issue, causing the Student Plaintiffs to suffer the damages described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT XII — NEGLIGENCE
**(Parent Plaintiffs v. Defendant Lancaster Country Day School)**

101.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

102.    At all times relevant hereto, Defendant Lancaster Country Day School owed a duty of care to Parent Plaintiffs arising from the special relationship between the School and the families who entrusted their minor children to Defendant's care, supervision, and protection, and who paid tuition in exchange for, among other things, Defendant's express and implied representations regarding student safety and welfare.

103.    Defendant owed a further duty of care to Parent Plaintiffs by virtue of its voluntary assumption of responsibility for the safety and wellbeing of their minor children during school hours and school-related activities, and its undertaking to communicate with parents regarding material threats to their children's welfare.

104.    Defendant breached its duty of care to Parent Plaintiffs by, among other things:

    (a) Failing to take reasonable measures to protect student victims of AI-generated nude images;

28

(b) Failing to implement reasonable policies and procedures to avoid and/or mitigate harm to students, including the creation and dissemination of AI-generated nude images;

(c) Failing to use reasonable care that students would not harm classmates using school-issued devices, on school property, and/or on school internet connection, including by creating and disseminating AI-generated nude images;

(d) Failing to use reasonable care when hiring, training, and supervising staff to ensure they take appropriate actions when faced with student-on-student misconduct, including the creation and dissemination of AI-generated nude images;

(e) Failing to adequately report the November 2023 S2SS tip regarding AI-generated nude images of students to law enforcement, ChildLine, or any other appropriate authority, as required by law and by reasonable institutional practice;

(f) Failing to use reasonable care when admitting and supervising students to ensure that students will not harm classmates, including by creating and dissemination AI-generated nude images;

(g) Conducting a wholly inadequate "investigation" of reported misconduct by students, including the creation and dissemination of AI-generated nude images;

(h) Failing to notify the parents of any potential victim following the November 2023 report;

(i) Failing to preserve or review electronic evidence on school-issued devices following receipt of the S2SS tip;

(j) Failing to timely contact law enforcement;

29

(k) Obstructing law enforcement's investigation by refusing to provide a school yearbook and failing to respond to the investigating detective's requests;

(l) Instructing and discouraging victims and their families from seeking assistance from law enforcement;

(m)Failing to implement and enforce adequate policies and procedures governing Safe2Say Something reports and mandatory reporting obligations;

(n) Failing to use reasonable care when admitting students who may pose a danger to classmates;

(o) Admitting a student with a known prior history of concerning behaviors and thereafter failing to appropriately monitor that student's conduct;

(p) Failing to provide adequate support, counseling, and resources to the victims following the abuse;

(q) Otherwise failing to use due care under the circumstances.

105.    As a direct and proximate result of Defendant's breach, Parent Plaintiffs have suffered damages including but not limited to: costs of psychological counseling and trauma therapy for their minor children; lost wages and income lost due to time devoted to managing the crisis caused by Defendant's failures; loss of their minor children's services and companionship; severe emotional distress; and physical injuries including but not limited to anxiety, headaches, sleep dysregulation, insomnia, hyperventilation, and loss of concentration.

106.    Defendant's breach was the direct and proximate cause of all damages suffered by Parent Plaintiffs, as the harm was a foreseeable consequence of Defendant's failure to fulfill its duties of care.

30

**WHEREFORE**, Parent Plaintiffs demand judgment against Defendant Lancaster Country Day School for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

**COUNT XIII — NEGLIGENCE *PER SE***
**(Parent Plaintiffs v. Defendant Lancaster Country Day School)**

107. Parent Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

108. Pennsylvania's Child Protective Services Law, 23 Pa. C.S. § 6311 et seq., imposes mandatory reporting obligations on school employees and administrators who have reasonable cause to suspect that a child has been subjected to abuse, including sexual exploitation and the creation of sexually explicit imagery involving minors.

109. At all times relevant hereto, Defendant's employees, administrators, and agents were mandatory reporters under the CPSL and had reasonable cause to suspect, and in fact knew, that minor students in Defendant's care had been subjected to abuse within the meaning of the statute, no later than November 2023.

110. Defendant, through its employees, administrators, and agents, violated the CPSL by failing to report the known or suspected abuse to law enforcement or child protective services.

111. Parent Plaintiffs are members of the class of persons the CPSL was designed to protect, namely, legal guardians of children who rely on school mandated reports to report abuse of their children when those children are within the school's care, and who suffer ongoing harm as a direct consequence of the failure to report.

112. The harm suffered by Parent Plaintiffs is of the type the CPSL was designed to prevent. Had Defendant fulfilled its mandatory reporting obligations, the abusive images would

31

have stopped and the injuries suffered by the Parent Plaintiffs would have been avoided or mitigated.

113.    Defendant's violation of the CPSL constitutes negligence per se, and Parent Plaintiffs are entitled to recover all damages proximately caused by that violation, including but not limited to: costs of psychological counseling and trauma therapy for their minor children; lost wages and income lost due to time devoted to managing the crisis caused by Defendant's failures; loss of their minor children's services and companionship; severe emotional distress; and physical injuries including but not limited to anxiety, headaches, sleep dysregulation, insomnia, hyperventilation, and loss of concentration.

**WHEREFORE**, Parent Plaintiffs demand judgment against Defendant Lancaster Country Day School for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## COUNT XIV — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Parent Plaintiffs v. Defendant Lancaster Country Day School)

114.    Parent Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

115.    Defendant owed a duty of care to Parent Plaintiffs arising from the special relationship between the school and the families whose minor children were entrusted to its care, and from Defendant's voluntary assumption of a duty to create a safe environment for students and to communicate with and inform parents regarding threats to their children's welfare.

116.    Defendant breached its duty of care to Parent Plaintiffs by, among other things:

(a) Failing to take reasonable measures to protect student victims of AI-generated nude images;

32

(b) Failing to implement reasonable policies and procedures to avoid and/or mitigate harm to students, including the creation and dissemination of AI-generated nude images;

(c) Failing to use reasonable care that students would not harm classmates using school-issued devices, on school property, and/or on school internet connection, including by creating and disseminating AI-generated nude images;

(d) Failing to use reasonable care when hiring, training, and supervising staff to ensure they take appropriate actions when faced with student-on-student misconduct, including the creation and dissemination of AI-generated nude images;

(e) Failing to adequately report the November 2023 S2SS tip regarding AI-generated nude images of students to law enforcement, ChildLine, or any other appropriate authority, as required by law and by reasonable institutional practice;

(f) Failing to use reasonable care when admitting and supervising students to ensure that students will not harm classmates, including by creating and dissemination AI-generated nude images;

(g) Conducting a wholly inadequate "investigation" of reported misconduct by students, including the creation and dissemination of AI-generated nude images;

(h) Failing to notify the parents of any potential victim following the November 2023 report;

(i) Failing to preserve or review electronic evidence on school-issued devices following receipt of the S2SS tip;

(j) Failing to timely contact law enforcement;

33

(k) Obstructing law enforcement's investigation by refusing to provide a school yearbook and failing to respond to the investigating detective's requests;

(l) Instructing and discouraging victims and their families from seeking assistance from law enforcement;

(m) Failing to implement and enforce adequate policies and procedures governing Safe2Say Something reports and mandatory reporting obligations;

(n) Failing to use reasonable care when admitting students who may pose a danger to classmates;

(o) Admitting a student with a known prior history of concerning behaviors and thereafter failing to appropriately monitor that student's conduct;

(p) Failing to provide adequate support, counseling, and resources to the victims following the abuse;

(q) Otherwise failing to use due care under the circumstances.

117. Upon witnessing the harm suffered by their children, Parent Plaintiffs suffered severe emotional distress.

118. The emotional distress suffered by the Parent Plaintiffs has resulted in physical manifestations including but not limited to sleep disruption, anxiety, insomnia, feelings of numbness, loss of appetite, and headaches.

119. As a direct and proximate result of Defendant's breach, Parent Plaintiffs have suffered damages including but not limited to: costs of psychological counseling and trauma therapy for their minor children; lost wages and income lost due to time devoted to managing the crisis caused by Defendant's failures; loss of their minor children's services and companionship;

severe emotional distress; and physical injuries including but not limited to anxiety, headaches, sleep dysregulation, insomnia, hyperventilation, and loss of concentration.

120.   Defendant's breach was the direct and proximate cause of all damages suffered by Parent Plaintiffs, as the harm was a foreseeable consequence of Defendant's failure to fulfill its duties of care.

**WHEREFORE**, Parent Plaintiffs demand judgment against Defendant Lancaster Country Day School for compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally as applicable, and award the following relief:

(a) Compensatory damages in an amount to be determined at trial for all physical, psychological, emotional, reputational, and economic harm suffered by the Student Plaintiffs and Parent Plaintiffs;

(b) The statutory minimum damages provided under 18 U.S.C. § 2255, including the $150,000 presumed minimum per defendant who violated the applicable federal statutes;

(c) Punitive and exemplary damages against all Defendants in amounts sufficient to punish the Defendants' conduct and deter future similar misconduct;

(d) Pre-judgment and post-judgment interest as provided by law;

(e) Reasonable attorneys' fees and costs of litigation as authorized by 18 U.S.C. § 2255 and Title IX;

(f) Injunctive relief requiring LCDS to implement and maintain lawful, effective mandatory reporting policies and training programs;

(g) Injunctive relief requiring the AI Company Defendants to implement adequate safeguards against the generation of CSAM through their platforms; and

(h) Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 15, 2026

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
Nadeem A. Bezar, Esquire (No. 63577)
Alex Van Dyke, Esquire (No. 334456)
Grace Grimes, Esquire (No. 332232)
1525 Locust Street, 13th Floor
Philadelphia, PA 19102
(215) 772-0522
*Attorneys for Plaintiffs*

36